UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN S., <br> Plaintiff, <br> v. <br> ANDREW M. SAUL, <br> Defendant. | Case No. 20-cv-07168-JSC <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 14, 17 |

Plaintiff seeks Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits (SSI) for a combination of physical and mental impairments, including: osteoarthritis, disorders of back discogenic and degenerative, carpal tunnel syndrome, slipped hip with chronic pain, adjustment disorder with depressive, high blood pressure, and post-traumatic stress disorder ("PTSD"). (Administrative Record "AR" 112.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the partially favorable final decision by the Administrative Law Judge ("ALJ").[1] Now pending before the Court are Plaintiff's and Defendant's motions for summary judgment. (Dkt. Nos. 14, 17.)[2] For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for summary judgment, and GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment, and REMANDS for further proceedings consistent with this Order.

//

//

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. Section 636(c). (Dkt. Nos. 2, 8.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents

**BACKGROUND**

**A. Procedural History**

Plaintiff applied for DIB and SSI in April and May of 2014, respectively, alleging a disability since April 30, 2010. (AR 336-39.) The agency denied her claims. (AR 154-58, 167-72.) She requested reconsideration with good cause for late filing, which was denied. (AR 159, 166, 167.) She then filed a request for hearing. (AR 174.) Her application was dismissed without prejudice due to her failure to appear for her scheduled court hearing. (AR 142, 269.) The Appeals Council then provided her with another opportunity for a hearing, which was held before an ALJ. (AR 50-69.) The ALJ issued a partially favorable opinion which concluded that the onset date of her disability was on, but not before, June 1, 2018. (AR 20.) Plaintiff subsequently appealed to the Appeals Council which found no reasons to review the ALJ's decision and denied Plaintiff's request for review. (AR 1.)

In accordance with Civil Local Rule 16-5, the parties filed cross motions for summary judgment. (Dkt. Nos. 14, 17.)

**B. Issues for Review**

1. Did the ALJ err in determining that Plaintiff's mental impairments were non-severe?
2. Did the ALJ err in evaluating the medical evidence?
3. Did the ALJ err in evaluating the Listings for Plaintiff's physical and/or mental impairments?
4. Should the case be remanded for payment of benefits or for additional proceedings?

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age,

education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," ("RFC") the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds; *see also* 20 C.F.R. § 416.920(a).

**DISCUSSION**

Because the ALJ found Plaintiff disabled as of June 1, 2018, the sole issue is whether the ALJ erred in not finding that she was disabled prior to that date, and in particular, as of her alleged disability onset date of April 30, 2010.

**I.      The ALJ's Determination that Plaintiff Had No Severe Mental Impairments**

Plaintiff first challenges the ALJ's step two determination that she did not suffer a severe mental impairment. An impairment is considered severe if it "significantly limits the claimant's physical or mental ability to do basic work activities." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (internal quotations and citations omitted).

The plaintiff has the burden to demonstrate the existence of a medically determinable impairment through medical evidence. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also* 20 C.F.R. § 404.1508 (providing that claimant must establish existence of medically determinable impairment from "medically acceptable clinical and laboratory diagnostic techniques"). The Ninth Circuit has recognized, however, that the step-two inquiry is a "*de minimis* screening device used to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (internal quotation marks and citation omitted). Indeed, the ALJ can find that an impairment or combination of impairments is non-severe "only if the evidence establishes a

3

slight abnormality than has no more than a minimal effect on an individual's ability to work." *Smolen,* 80 F.3d at 1290. (internal quotation marks and citations omitted.) On review, this Court's duty is to determine "whether the ALJ had substantial evidence to find that the medical evidence clearly established that" Plaintiff did not have a severe mental impairment prior to the June 1, 2018 onset date. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

The ALJ identified four reasons why the record evidence did not support a finding of a severe mental impairment for a 12-month period prior to June 1, 2018: (1) Plaintiff's "limited and sporadic mental health treatment prior to the established disability onset date;" (2) Plaintiff's ability to carry on activities of daily living; (3) Plaintiff's own testimony that she stopped working due to physical, not mental impairments; and (4) Plaintiff's long history of polysubstance abuse. (AR 26-27.) The Court concludes that, while the first reason, standing alone, does not constitute substantial evidence, the final three reasons are sufficient to establish that Plaintiff's mental impairments prior to June 1, 2018 were not sufficiently severe at step two. Further, Plaintiff's arguments regarding errors in weighing the medical evidence do not undermine the non-severity finding.

**A. Plaintiff's "Limited and Sporadic" Mental Health Treatment Prior to June 2018**

First, the ALJ found that Plaintiff's mental impairments were non-severe because "the record shows limited and sporadic mental health treatment prior to the established disability onset date," with no significant psychiatric care or treatment until *after* the alleged disability onset. (AR 26 (emphasis added).) This lack of mental health treatment, standing alone, does not constitute substantial evidence. A plaintiff's lack of consistent mental health treatment cannot form the basis for an ALJ's finding that a mental impairment is not severe "both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *See Regennitter v. Commissioner of Soc. Sec.,* 166 F.3d 1294, 1299-1300 (9th. Cir. 1999).

Further, a lack of treatment should not be used to reject a claimant's allegations of disability "when the record establishes that the claimant could not afford it." *Id.* at 1297. Plaintiff has a history of homelessness and financial problems. (AR 369-82.) For many years,

her income has been limited to Cal Works and food stamps. (AR 55.) Given Plaintiff's history, the ALJ erred in holding her failure to obtain treatment for her mental health issues against her. *See Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.").

### B. Plaintiff's Ability to Carry on Activities of Daily Living

Second, the ALJ found that Plaintiff's mental impairments were non-severe prior to June 2018 because of her ability to carry on activities of daily living. (AR 26.) The ALJ cited to evaluations in the record that observed Plaintiff's "cooperative behavior and good grooming," her ability to "get along with others, count change, handle a savings account, follow instructions well, and her activities of daily living," to support the finding that Plaintiff's alleged mental impairments were non-severe. (AR 28-29.)

Plaintiff argues that there are "remarkable clinical findings and limitations in daily living that the ALJ ignored." (Dkt. No. 18 at 6.) However, the evidence upon which Plaintiff relies—the examinations by Ms. Srivastava and Ms. Moses—do not bolster Plaintiff's contention that her mental impairments were severe before June 1, 2018 because the examinations occurred a month later, in July 2018. Moreover, Plaintiff has not identified any additional evidence which supports her argument that there are remarkable clinical findings that the ALJ ignored because, to the extent that she relies on Dr. Snyder's 2014 evaluation, Dr. Snyder actually concluded that Plaintiff's cognition appeared "grossly intact," her "presentation appears primarily medical in nature but she endorsed a mild amount of depression." (AR 773.)

### C. Plaintiff's Testimony That She Stopped Working Due to Physical Limitations

Third, the ALJ found that Plaintiff's mental impairments were non-severe because of her own testimony that she stopped working due to physical, not mental limitations. (AR 26.) The ALJ also noted that she "was able to work steadily at substantial gainful activity levels for years until the alleged onset of disability" on April 30, 2010. (AR 26 (citing AR 448).) Plaintiff insists that this finding was in error because there is "ample evidence that her mental ability to do basic work activities were significantly limited." (Dkt. No. 18 at 4.) She highlights her last year of

work was 2010, and that she had significantly decreased earnings compared to the prior seven years. (*Id.* at 5 (citing AR 438-444, 477).) This evidence, however, does not contradict the ALJ's finding that she stopped working due to physical, not mental limitations. To the extent that Plaintiff identifies her history of trauma and testimony regarding depression and anxiety, this too fails to counter the ALJ's finding which was based on Plaintiff's own testimony that she stopped work based on her physical impairments. (AR 58-59.) Accordingly, Plaintiff has failed to show that the ALJ's finding that she stopped work due to her physical rather than mental impairments is not supported by substantial evidence.

### D. Plaintiff's Polysubstance Abuse

Finally, the ALJ determined that Plaintiff's mental impairments were non-severe because of her "long history of polysubstance abuse, including heroin, cocaine and methamphetamine." (AR 26.) He stated that, "although [Plaintiff's] substance abuse likely exacerbated her conditions, the record does not support a finding of severe mental impairment for any twelve-month period, with or without substance abuse." (*Id.*)

If a claimant is disabled with medical evidence of polysubstance abuse, the ALJ must assess whether claimant's addiction is a "contributing factor material to the determination of disability." 20 C.F.R. § 404.1535. The issues the ALJ must assess are: (1) "whether [the ALJ] would still find [claimant] disabled if [claimant]" ceased drug use; and (2) "which of [claimant's] current physical and mental limitations, upon which [the ALJ] based [their] current disability determination, would remain if [claimant] stopped using drugs . . . and then determine whether any or all of [claimant's] remaining limitations would be disabling." *Id.* If the ALJ finds that the remaining limitations would *not* be disabling, then the ALJ finds that claimant's polysubstance abuse *is* a "contributing factor material to the determination of disability." *Id.* (emphasis added.) However, if the ALJ finds that the remaining limitations *are* disabling, claimant is disabled *independently* of their polysubstance addiction and the ALJ will find that that polysubstance abuse is *not* a "contributing factor material to the determination of disability." *Id.* (emphasis added.)

Plaintiff does not address the ALJ's finding that her polysubstance abuse is a

6

1    contributing factor to her disability.  Given Plaintiff's failure to present evidence that her non-
2    substance abuse-related mental impairments would "remain during periods when she stopped
3    using drugs or alcohol," Plaintiff has not shown that the ALJ's erred in relying on her
4    polysubstance abuse.  *See Ball v. Massanari,* 254 F.3d 817, 821 (9th Cir. 2001) (internal
5    quotations and citations omitted).

**E. Plaintiff's Other Argument of Error**

Plaintiff insists that the ALJ erred in weighing the medical evidence supporting her claimed mental impairments.  In particular, Plaintiff argues that the ALJ erred in giving more weight to the opinions of examining psychological consultants Drs. Ying and Brode than treating therapists Ms. Srivastava and Ms. Moses because, "as a general rule, more weight should be given to the opinions of treating sources." (Dkt. No. 14 at 10 (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th. Cir. 1987); 20 C.F.R. § 416.927(d)(2)).)  Plaintiff also argues that the ALJ should have given more weight to Dr. Wiebe's evaluation than to Drs. Ying's and Brode's because it was consistent with Ms. Srivastava's and Ms. Moses' opinions. Finally, Plaintiff argues that the ALJ erred by failing to address Plaintiff's treatment records by treating therapist Jennifer Spevak (LCSW) from August 2017 until October 2017, who diagnosed her with unspecified depressive disorder, unspecified anxiety disorder, and stressor-related disorder. (Dkt. No. 14 at 9 (citing AR 973).)

Plaintiff's challenge to the ALJ's weighing of the medical evidence regarding her mental impairments is unavailing because her arguments relate to opinions which either post-date or are near the ALJ's finding of disability—opinions which do not address the question of whether Plaintiff's mental impairments were disabling for the twelve months prior to June 2018. *See* 20 C.F.R. §§ 404.1505, 1509 (stating that to meet definition of disability, claimant must have a severe impairment preventing work; impairment must have lasted or be expected to last at least twelve months).   For example, while Ms. Srivastava and Ms. Moses treated Plaintiff in March 2018, prior to the ALJ's June 2018 onset of disability finding, their treatment began three months prior to the disability onset date.  Similarly, although Ms. Spevak's August 2017 treatment notes document Plaintiff's self-report of depression and anxiety and include a

7

diagnosis of unspecified depressive disorder and unspecified anxiety disorder, this treatment record is ten months prior to Plaintiff's disability onset date. (AR 972-76.) Even if this were not the case, Plaintiff concedes that Ms. Spevak's treatment notes do not constitute medical opinion evidence. (Dkt. No. 18 at 7.)

In sum, none of Plaintiffs' arguments regarding the weighing of the medical evidence regarding her mental impairment contradict the ALJ's finding that her mental impairments were not severe prior to June 2018.

*\*\*\**

Accordingly, the ALJ's finding that Plaintiff's mental impairments were not severe prior to the disability onset date of June 2018 is supported by substantial evidence.

## II.     ALJ's Determination That Plaintiff Did Not Meet a Listing

At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to determine whether they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. 404.1520(d); *Tackett,* 180 F.3d at 1098. "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three, and the ALJ need not make any specific findings as to his or her ability to perform past relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing C.F.R. § 404.1520(d)). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boiler plate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis*, 236 F.3d at 512. Nonetheless, the plaintiff bears the burden of proving that he satisfied the listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th. Cir. 2005).

Plaintiff contends that the ALJ erred in finding that neither her mental or physical impairments met or equaled a listing.  Given the Court's conclusion above that the ALJ did not error with respect to his determination that Plaintiff's mental impairments were not severe, the Court only addresses Plaintiff's arguments regarding her physical impairments.

//

**A. Plaintiff's Physical Impairments**

Plaintiff challenges the ALJ's determination that Plaintiff failed to "establish a [physical] impairment that is accompanied by signs reflective of Listing-level severity." (AR 29.) The ALJ found that Plaintiff did not meet the requirements of Section 1.02 (major dysfunction of a joint due to any cause) because her physical examinations "have not established the required gross anatomical deformity, and clinical imaging does not indicate the requisite joint space narrowing, bony destruction or anklyoses." (AR 30 (citing AR 695, 703, 777, 864, 1098-99).) He noted that the record "does not establish ineffective ambulation prior to the established onset of disability," and that Plaintiff acknowledged that "she did not begin using her walker until approximately six months before the hearing." (AR 30 (citing AR 776).) The ALJ also found that she did not meeting Listing 1.04 (disorders of the spine) because there was no evidence of "nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (AR 30.) The ALJ also considered whether Plaintiff's obesity, which while not its own listing, in combination with other impairments was of Listing level severity and concluded that it was not. (*Id.*) The ALJ did the same with respect to Plaintiff's alleged carpal tunnel syndrome. (*Id.*)

Plaintiff contends that the ALJ erred in failing to consider whether the combined effects of her spine, hip, and left leg dysfunction would equal a listing for the time period prior to the disability onset date. In particular, Plaintiff insists that she "established symptoms, signs, and laboratory findings 'at least equal in severity and duration' of Listings 1.02, 1.03, and 1.08" prior to June 2018. (Dkt. No. 14 at 14 (citing AR 695).)   The Commissioner does not respond to Plaintiff's equivalence argument and instead argues that the evidence does not support listing 1.08 because Plaintiff did not have surgical intervention during the claimed period of disability and does not met Listing 1.02 and 1.03 because she has not shown the inability to ambulate effectively.

If a claimant's impairment is not listed, the ALJ can find medical equivalence if "the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526. The ALJ must compare the "'symptoms, signs and laboratory findings' about the claimant's impairment as evidenced by the medical records 'with the medical criteria shown

9

with the listed impairment.'" *Santiago v. Barnhart*, 278 F. Supp. 2 1049, 1057 (N.D. Cal. 2003) (citing 20 C.F.R.§ 404.1526). The combined effect of all the claimant's impairments must be considered, regardless of "'whether any such impairment if considered separately' would be sufficiently severe." *Santiago,* 278 F. Supp. 2d at 1057 (citing 42 U.S.C. § 423(d)(2)(c)). Though it is the claimant's burden to prove that she equals all the requirements of a listed impairment, *see Kennedy v. Colvin*, 738 F.3d 1172,1174 (9th. Cir. 2013), if a claimant has a combination of impairments that does not meet a listing, the ALJ must determine whether the combination of impairments is medically equivalent to the listing. 20 C.F.R. § 404.1526.  To trigger the equivalence determination, the claimant must (1) "produce objective medical evidence of an impairment or impairments;" and (2) "show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996) (internal citations and quotations omitted); *see also Burch,* 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence [to] establish equivalence.").

Here, Plaintiff has carried her burden of offering evidence that predates her June 1, 2018 disability onset date which supports a reasonable inference of equivalence.  In particular, Plaintiff's August 5, 2010 cervical spine X-ray shows that "flattening of the cervical lordosis, 'severely decreased'" with ". . . multiple subluxations detected throughout the spinal column along with myospasm in cervical and lumbar region." (AR 663.)  A year later, in June 2011, she was noted to have a "history of chronic neck, shoulder, left leg and lower back pain," and her "left leg had a length discrepancy." (AR 694.) In her objective exam, the doctors noted that:

> She does have sacroiliac joint restriction. *Her left side has no motion and* right side has little motion, *but both are very restricted.* She has tight lumbar spine paraspinal muscles. She has thoracolumbar junction restricted to the left rotation and elevated left first rib, and her C4-C6 are in neutral position, side bend rotated to the right. [Additionally,] she has (1)Chronic left leg pain secondary to leg length discrepancy[;] (2) Chronic lower back pain secondary to left hip surgery [;] and (3) Left shoulder and left upper extremity pain is likely secondary to thoracic outlet syndrome.

(AR 695-96) (emphasis added.) On a return visit a month later the doctor noted:

10

> Her SI joint is restricted bilaterally, left greater than right. Her left side range of motion is restricted by hardware. She has a tight L-spine paraspinal muscles. She has a tight and shallow left thoracic outlet. Restricted cervicothoracic junction, TI is flexed side bend rotated to the left. She has tight C-spine paraspinals and suboccipital muscles.

(AR 693.) In a December 2014 exam, Dr. Gray diagnosed her with "slipped capital femoral epiphysis, left hip." (AR 782.) Almost a year later, Dr. Williams also noted that she is "still positive for joint pain" with a pain score of 8/10. (AR 812.)

Where, as here, "the claimant presents evidence in an effort to establish equivalence," the ALJ is "required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination." *Burch*, 400 F.3d at 683. The Commissioner does not dispute that the ALJ did not do so here. While the ALJ discussed equivalence in the context of Plaintiff's obesity, his finding that Plaintiff's "obesity either alone or in the context of her other impairments, was not at Listing level severity" based on her ability to ambulate effectively, is not supported by the evidence. (AR 30.) Namely, the ALJ relied upon Dr. Pon's October 2014 finding that Plaintiff had a stable gait without the use of an assistive device, but the ALJ ignored the following sentence from Dr. Pon's findings: "however, the claimant stated that she has fallen without her cane, so she used a cane for support, so by history a cane is beneficial." (AR 778.) An ALJ errs when he considers the claimant's evidence selectively and ignores evidence that contradicts his findings. *See Fanlo v. Berryhill*, No. 17-cv-01617, 2018 WL 1536732, at *10 (S.D. Cal. Mar. 28, 2018) (stating that the "ALJ cherry-picked [the claimant's] progress notes ... to support her conclusion that [the claimant] was stable and improving, but the ALJ failed to acknowledge progress notes from the same time period that directly contradicted her conclusion," and explaining that ALJs are "not permitted to 'cherry-pick' only the records that support [their] position"); *Scrogham v. Colvin*, 765 F.3d 685, 698-99 (7th Cir. 2014) (explaining that an ALJ errs by "consider[ing] [record] evidence ... selectively [and] ignoring evidence that contradict[s] her findings.").

In *Cargill v. Berryhill*, 762 F. App'x 407, 409 (9th Cir. 2019), the Ninth Circuit rejected the ALJ's boilerplate finding that the plaintiff had not demonstrated the "inability to ambulate

effectively." The plaintiff there used a single point cane for a right ankle injury and the ALJ concluded without analysis that he did not meet Listings 1.02 and 1.03 because of his ability to ambulate effectively. *Id.* The Ninth Circuit noted that while one example of "the inability to ambulate effectively is the 'inability to walk without the use of a walker, two crutches or two canes,'" the "use of one cane could not independently disqualify [the claimant] from meeting a listing." *Id.* at 409 (quoting Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58,010, 58,013 (Nov. 19, 2001) ("[I]f someone who uses one cane or crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or equal a listing")). So too here. The ALJ failed to consider whether Plaintiff's use of cane prior to her walker in June 2018, demonstrated an inability to ambulate effectively.

Accordingly, the ALJ erred with respect to his consideration of the medical evidence and whether it met or equaled a listing when considered singly or in combination. *See Laborin v. Berryhill*, 692 Fed. Appx. 959, 962 (9th Cir. 2017) ("A bare statement that [Plaintiff] does not meet a listing, without appropriate evaluation or discussion of the medical evidence, is insufficient to conclude that [Plaintiff's] impairment does not meet or medically equal a listed condition.").

### III.     Remand

When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). A remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal quotation marks and citation omitted).

The proper remedy here is remand for further proceedings. The record must be more fully developed regarding whether Plaintiff's physical impairments medically equaled Listings 1.02, 1.03, and 1.08 prior to the established June 1, 2018 onset of her disability. In particular, the ALJ shall consider whether Plaintiff's medical evidence sufficiently establishes symptoms, signs, and laboratory findings that are at least equal in severity and duration, and to conduct a medical equivalence analysis based on the medical evidence between her alleged onset of disability (April 30, 2010) and the date the ALJ determined she was disabled (June 1, 2018.)

## CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART Plaintiff's motion, and GRANTS IN PART Defendant's motion. The Court REMANDS for further proceedings consistent with the Order.

This Order disposes of Docket Nos. 14 and 17.

**IT IS SO ORDERED.**

Dated: September 21, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge